**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **MYLES REHANA and BRIGID SCHULLERTS,** | § | |
| | § | |
| | § | |
| ***Plaintiffs*,** | § | **CIVIL ACTION NO. 4:26-cv-238** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **ARLINGTON INDEPENDENT SCHOOL DISTRICT** | § | |
| | § | |
| | § | |
| ***Defendant*.** | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiffs Myles Rehana and Brigid Schullerts ("Plaintiffs"), by and through their attorneys, brings this action for damages and other legal and equitable relief arising from Defendant ARLINGTON INDEPENDENT SCHOOL DISTRICT's ("Defendant") unlawful surveillance and the mental anguish caused by this illegal surveillance.

## INTRODUCTION

1. This is an action brought by Plaintiffs seeking damages from Defendants for secret audiotaping of the Plaintiffs in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2520, and constitute an invasion of privacy by intrusion upon their private affairs.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States. The federal rights asserted by Plaintiffs are enforceable under 18 U.S.C. § 2520.

3. This Court also has subject matter jurisdiction to adjudicate the supplemental state law claims that arose out of the same course of conduct giving rise to the principal claims of Plaintiff as stated below, pursuant to 28 U.S.C. § 1367.

4. Finally, this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(l) as well because: (a) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (b) there is complete diversity between Plaintiffs and Defendant.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the real and immediate harm sustained by Plaintiff occurred in this judicial district.

## PARTIES

6. Plaintiff Myles Rehana is a citizen of and currently resides in the State of Texas.

7. Plaintiff Brigid Schullerts is a citizen of and currently resides in the State of Texas.

8. Defendant Arlington Independent School District is a school district located in Arlington, Texas.

9. During all relevant times, Defendant engaged in an industry affecting commerce and had 15 or more employees.

## STATEMENT OF FACTS

10. On or about January 8, 2024, Plaintiff Brigid Schullerts commenced full-time employment as a Security Corporal with Defendant.

11. On or about February 13, 2024, Plaintiff Myles Rehana commenced full-time employment as a Security Corporal with Defendant.

12. Plaintiff Rehana's normal work hours were from 3:00 p.m. to 11:30 p.m. Starting in mid-November 2024, he was assigned to a night shift of 11:00 p.m. to 7:30 a.m.

13. Plaintiffs' primary job duty was to patrol and inspect all of the 80 campuses owned and operated by Defendant, in the company vehicle and on foot, inspecting the facilities, including checking exterior doors and other entry points, inspecting intrusion alarm system control panels, motion detectors and fire suppression system alarm panels, and responding to fire and burglary alarms as assigned by the company dispatch. Discrepancies and concerns were documented.

14. Plaintiffs' job duties required that they spend the majority of their tour of duty in a vehicle owned by Defendant, typically Chevrolet pick-up trucks.

15. Unbeknownst to Plaintiffs, every vehicle that they were required to drive for Defendant had an audio recording device implanted within.

16. Plaintiffs were never made aware by Defendant verbally or in writing that their voices were being recorded by an audio device whenever they were in a company vehicle.

17. At times during their tours of duty Plaintiff Rehana and Plaintiff Schullerts would speak with each other on their cell phones on speaker mode or through the Bluetooth connection of the company vehicle.

18. During the course of Plaintiff Rehana's employment, he was subjected to unwelcome sexual comments, "banter" and innuendo by a co-worker, Security Corporal Le'Anna Haynes, and his immediate supervisor, Patrol Lieutenant Jayne Rodriguez.

19. Plaintiff Rehana and Corporal Haynes drove the same company vehicle. They had daily contact during the overlap of their shifts at the security compound, when Corporal Haynes would hand over the vehicle keys and brief Plaintiff Rehana on anything of importance for his upcoming shift.

20. The sexually harassing conduct of Ms. Haynes began in May 2024.

21. Ms. Haynes would touch Plaintiff Rehana on his shoulders and arms.

22. Ms. Haynes told Plaintiff Rehana, "I can't wait to see those legs."

23. On May 27, 2024, Ms. Haynes sent Plaintiff Rehana a text that said, "This is me whistling really loudly in anticipation of seeing those legs woohoo."

24. In August 2024, Plaintiff Rehana and Plaintiff Schullerts each emailed the former Director of Security regarding concerns they had about the safety protocols of Plaintiff Rehana's then-supervisor, Sergeant William Krivit.

25. In October 2024, Patrol Lieutenant Rodriguez became Plaintiff Rehana's supervisor. Patrol Lieutenant Rodriguez commenced making unwelcome sexual comments to Plaintiff Rehana.

26. For example, in late October or early November of 2024, Plaintiff Rehana was being fitted for a bulletproof vest at Defendant's headquarters office. Patrol Lieutenant Rodriguez was sorting through the vests to see which one would fit Plaintiff Rehana. Patrol Lieutenant Rodriguez asked Plaintiff Rehana to model a vest and said he looked good in uniform. Patrol Lieutenant Rodriguez said that Plaintiff Rehana should let her take pictures of him.

27. Plaintiff Schullerts learned about and sometimes observed the sexual harassment on the job experienced by Plaintiff Rehana.

28. On numerous occasions, Plaintiff Rehana would discuss the unwelcome sexual conduct he was experiencing on the job in phone calls with Plaintiff Schullerts. Plaintiff Rehana and Plaintiff Schullerts would each be in their company vehicles. At times profanity was used in the context of these conversations.

29. At times, Plaintiff Schullerts' job duties resulted in her accompanying Plaintiff Rehana in his company vehicle, or he would have to accompany her in her company vehicle.

30. During November and December 2024, Plaintiff Rehana and Plaintiff Schullerts would discuss the unwelcome conduct that Plaintiff Rehana was experiencing, first from his co-worker, Corporal Haynes, then from Patrol Lieutenant Rodriguez.

31. Plaintiff Rehana had pre-existing conditions of a panic disorder, anxiety disorder and depression.

32. The unwelcome comments and touching he experienced on the job increased his anxiety. He did not feel he could bring up the conduct to management. He began having panic attacks.

33. Plaintiff Rehana, in phone calls from his vehicle, and in person when Plaintiff Rehana and Plaintiff Schullerts were in the vehicle together, informed Plaintiff Schullerts of the mental anguish that he was experiencing due to the harassment.

34. Plaintiff Schullerts observed the mental toll of the sexually hostile work environment experienced by Plaintiff Rehana.

35. In her company vehicle, in person and by phone, Plaintiff Schullerts encouraged Plaintiff Rehana to report the harassment to Defendant to try to get it stopped.

36. On December 9, 2024, Michael Nunley, Security Fleet Manager, told Plaintiff Schullerts that everything she said in the company vehicle could be heard. He played a recording of Plaintiff Schullerts inside her vehicle where she was speaking on her cell phone with a co-workers who was working in Dispatch.

37. Shocked, Plaintiff Schullerts told Plaintiff Rehana, by phone from her company vehicle,, that they were being continuously recorded by audio at work. Plaintiff Rehana was in his company vehicle at the time of her call They discussed the illegality of this secret recording,

and considered the manner in which it would be appropriate to report this invasion to someone outside of their employer.

38. The revelation that he had been subjected to secret audio recording by his employer since his date of hire weighed heavily on Plaintiff Rehana. The secret recording and the continuing subjection to sexual harassment, which he felt reluctant to report, worsened his anxiety symptoms, depression and panic attacks.

39. On December 16, 2024, Plaintiff Rehana informed management that he needed to take emergency medical leave.

40. He returned to work from medical leave on December 24, 2024.

41. On or about December 24, 2024, Defendant required Plaintiffs, for the first time, to sign a form acknowledging that they were was being recorded by the Defendant's "Samsara" application built into the vehicle.

42. Defendant's subjection of Plaintiffs to secret and illegal audio recording in their company vehicles was intentional.

43. Defendant's secret recording of the voice and conversations of Plaintiffs on the job was highly offensive.

44. This intrusion of the Plaintiffs' privacy by Defendant was unreasonable, unjustified and unwarranted.

45. Students attending Defendant's schools would regularly approach Plaintiffs in their vehicles at their and discuss matters through the driver's side window if Plaintiffs needed to talk to the student regarding safety or security concerns. Similarly, students would approach the vehicles with their own safety or security concerns. The right to privacy of these AISD students,

whose conversations were close enough to be recorded by Defendant, was similarly an invasive intrusion, especially exploitative given that they were minors.

46. Defendant, concerned about Plaintiffs' monitored discussion of the Defendant's illegal conduct regarding implanted recording devices, as well as their discussions and reports of sexual harassment by two employees, including a supervisor, began subjecting the Plaintiffs to adverse terms and conditions of their employment.

47. For example, for over two months after returning from his medical leave, Plaintiff Rehana was not allowed by Defendant to return to his regular job patrolling the campuses, despite the fact that he no longer had any medical restrictions. Instead he was kept at a desk job in Dispatch.

48. Similarly, Plaintiff Schullerts was kept off her Patrol job by Patrol Lieutenant Jayne Rodriguez in December 2024 and kept on a desk job in Dispatch. Defendant was aware that Plaintiff Schullerts had disabilities, including migraine headaches, back disabilities, and an anxiety disorder, all related to her military service. The Dispatch assignment exacerbated her back pain and increased her episodes of migraine headaches, all from being forced to sit and stare at camera footage for her entire shift at this desk job..

49. Plaintiff Rehana has a back disability resulting from his military service.

50. The desk position he was transferred to led his back disability to worsen. He felt severe pain from being forced by Defendant to sit at his job all day, rather than the varying duties inspecting campuses in the security job for which he was hired.

51. On March 7, 2025, Defendant put Plaintiffs on unpaid leave for a purported investigation about alleged misconduct. The nature of the purported investigation and misconduct was never revealed to either Plaintiff.

52. On March 14, 2025, Plaintiff Schullerts, specifically described to Defendant's Employee Relations Director and COO Hill the sexual harassment that Plaintiff Rehana had been subjected to by Corporal Haynes and Patrol Lieutenant Rodriguez. She used explicit details, including the contents of text messages she had seen, behavior she had witnessed, and phone calls Lieutenant Rodriguez had made to Plaintiff Rehana from her office phone about which Plaintiff Rehana had confided to Plaintiff Schullerts. In the meeting with HR and the COO, Plaintiff Schullerts noted that other co-workers had witnessed the sexually harassing behavior of Haynes and Patrol Lieutenant Rodriguez and had ridiculed Plaintiff Rehana for it. Plaintiff Schullerts informed HR and COO Hill that she had kept records of what had occurred.

53. In the meeting, it became obvious that Plaintiffs' conversations by phone and in their vehicles together had been monitored by Defendant.

54. Michael Hill, Chief Operations Officer (COO) of Defendant, specifically asked Plaintiff Schullerts if she used profanity at work.

55. COO Hill specifically asked Plaintiff Schullerts what she knew about the Samsara application.

56. Plaintiff Schullerts replied that she knew all Defendant's security employees had been lied to about the system in that they were not informed they were being recorded by audio mode.

57. Being on an indefinite period of unpaid leave resulted in bills and other financial obligations mounting for both Plaintiffs.

58. Being on an indefinite period of unpaid leave resulted in anxiety, loss of enjoyment of life, mental anguish and depression for Plaintiffs.

59. Ultimately, Plaintiffs, after several weeks without pay and with no end of the forced unpaid leave in sight, were constructively discharged from their employment in April 2025.

60. Each sought unemployment insurance benefits. The state unemployment benefit agency found each had been discharged by Defendant, and not for reasons of misconduct.

## CAUSES OF ACTION

### COUNT I
### ELECTRONIC COMMUNICATIONS PRIVACY ACT
18 U.S.C. § 2520
*Disparate Treatment*

61. Plaintiffs incorporate by reference and re-alleges the information set forth above, as if fully set forth herein.

62. At all relevant times herein, 18 U.S.C. § 251 l(l)(a) prohibited the intentional interception of any electronic communications between two parties without the consent of one or both parties to that communication.

63. 18 U.S.C. § 2511 provides that "any person who-(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" shall be punished.

64. Defendant intentionally intercepted Plaintiffs' oral communications, i.e., their phone calls, without their consent, thereby violating§ 251 l(l)(a).

65. 18 U.S.C. § 2520(a) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity ... which engaged in that violation such relief as may be appropriate."

66. 18 U.S.C. § 2520(b) provides that "[i]n an action under this section, appropriate relief include-(1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c) and punitive damages in appropriate cases; and (3) reasonable attorney's fees and other litigation costs reasonably incurred."

67. Under 18 U.S.C. § 2520(c)(2), "the court may assess damages whichever is the greater of- (A) the sum of the actual damages suffered by the Plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000."

68. By reason of the foregoing, as a result of Defendants' conduct described above, Plaintiffs are entitled to recover the maximum allowable statutory damages, punitive damages, and attorneys' fees and costs available under 18 U.S.C. § 2520.

## COUNT II
## INVASION OF PRIVACY BY INTRUSION

69. Plaintiffs incorporate by reference and re-alleges the information set forth above, as if fully set forth herein.

70. The interception and disclosure of Plaintiffs' oral communications without their consent constituted an unauthorized intrusion upon Plaintiffs' right to privacy.

71. This intrusion was highly offensive to a reasonable person.

72. The matter upon which the intrusion occurred was private.

73. The intrusion caused anguish and suffering for Plaintiffs.

## DEMAND FOR JURY TRIAL

74. Plaintiff demands a jury trial on all matters raised in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

1. Damages from the above listed claims for a sum in excess of $
2. punitive damages allowable by law;
3. attorneys' fees pursuant to 18 U.S.C. § 2520(6) and 42 U.S.C. § 1988(6), or otherwise allowable by law;
4. plaintiffs' recoverable costs.

Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: March 3, 2026

Respectfully submitted,

*<u>/s/ Jay D. Ellwanger</u>*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
Brian Pounds
Texas State Bar No. 24126432
bpounds@equalrights.law
**ELLWANGER HENDERSON LLLP**
11149 Research Blvd., Ste. 100
Austin, Texas 78759
Telephone: (737) 808-2260
Facsimile: (737) 808-2262

David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
**ELLWANGER HENDERSON LLLP**
400 S. Zang Blvd., Suite 600
Dallas, Texas 75208
Telephone: (214) 948-3334
Facsimile: (214) 853-9410

**COUNSEL FOR PLAINTIFF**