**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **MYLES REHANA and BRIGID SCHULLERTS,** | § | |
| *Plaintiffs*, | § | **CIVIL ACTION NO. 4:26-cv-238** |
| **v.** | § | |
| **ARLINGTON INDEPENDENT SCHOOL DISTRICT** | § | |
| ***Defendant*.** | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF**

COME NOW the Plaintiffs Myles Rehana (Rehana) and Brigid Schullerts (Schullerts) and file this Response in Opposition to Defendant's Motion for Partial Dismissal of Plaintiffs' First Amended Complaint and Brief in Support thereof and would show the Court as follows:

## INTRODUCTION

In Defendant's Motion to Dismiss, Defendant raises two issues:

1. Plaintiff's Count II Invasion of Privacy State Court claims should be dismissed under Rule 12(b)(1) because as a governmental unit, the Defendant has immunity from suit.
2. Plaintiff's Count I claims under the Electronic Communications Privacy Act claim should be dismissed under Rule 12(b)(6) because ECPA does not provide a cause of action against the Defendant as a governmental entity.

**DEFENDANT'S 12(b)(1) MOTION TO DISMISS SHOULD BE DENIED:**
**DISTRICT'S GOVERNMENT IMMUNITY IS WAIVED BY TCPR CODE §101.021**

FRCP 12(b)(1) authorizes the dismissal of a case for lack of jurisdiction over the subject matter. [W]hen, as here, 'a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) attack before addressing any attack on the merits.' " *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 2019 (5th Cir. 2010), *quoting Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) The Rule 12(b)(1) motion "concerns the court's 'very power to hear the case ... [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.' " *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), *cert.denied*, 454 U.S. 897 (1981)

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Id.* Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Association v. Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998)

In ruling on a motion to dismiss, the Court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *Tucker*, 645 F.2d at 413. Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C.Wright & A. Miller, Federal Practice and Procedure (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

In its motion, Defendant claims that Arlington ISD is entitled to governmental immunity from the Invasion of Privacy Claims in Count II of Plaintiffs' Original Complaint. There is no dispute that Arlington ISD is a governmental unit as a public school district in the State of Texas. Under the doctrine of sovereign immunity, the state is not liable for the torts of its agents or officers unless there is a constitutional or statutory waiver of immunity. *Texas Highway Dept. v. Weber,* 147 Tex. 628 (1949). In this instance, the District's governmental immunity is waived by Texas Civil Practice and Remedies Code, §101.021, which provides that government immunity is waived if there is a personal injury caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if the personal injury "arises from the operation or use of a motor-driven vehicle."

"Use" or "operation" are nothing if not common, everyday words. "[O]rdinary citizens should be able to rely on the plain language of a statute to mean what it says," particularly when the statute uses ordinary words like "use" and "operation." *Fitzgerald v. Advanced Spine Fixation Sys.,* 996 S.W.2d 864, 866 (Tex. 1999) Use has been defined as "to put or bring into action or service; to employ for or apply to a given purpose." *Mount Pleasant Independent School District v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex. 1989). "Operation" has been defined as referring to "a doing or performing of a practical work." *Id.*

In this instance, the facts in the Plaintiffs' Amended Complaint (paragraphs 13-20, 39-41, 44, 48-50, 55-59 and 90) and in the Affidavit of Brigid Schullert (Exhibit A)[1] establish that the

---

[1] Plaintiff requests that this Court consider the facts in Exhibit A in making its determination on the Rule 12(b)(1) motion to dismiss. If requested by the Court, Plaintiff seeks to amend its Complaint so that the undisputed facts from Exhibit A can be incorporated into the Complaint. *Moran v. Kingdom of Saudi Arabia,* 27 F.2d 169, 172 (5th Cir. 1994 ("When a party challenges subject matter jurisdiction, the court is given the authority to resolve factual disputes, along with the discretion to devise a method for making a determination with regard to the jurisdictional issue[,] ... which may include considering affidavits, allowing further discovery, hearing oral testimony, conducting an evidentiary hearing.").

highly advanced operations of the Samsara fleet internet-connected, AI Dash Camera and Fleet Management System are so closely connected to the Arlington ISD's fleet of security vehicles that it is part of the "operation" and "use" of the District's patrol vehicles. Just like turning the key in the ignition, hitting the brake pedal or scanning the car's dashboard, security officers of Arlington ISD, including the Plaintiffs Myles Rehana and Brigid Schullerts, operated the Defendant's patrol vehicles, typically Chevrolet pick-up trucks, using the permanently installed Samsara Dash Camera, under the watchful eyes of their supervisors and the officers on Dispatch. (Amended Complaint, para. 17)

It is undisputed that Schullerts, Rehana and the other Security Officers for Arlington ISD were instructed to sign in to the Samsara Dash Camera immediately upon entering the patrol vehicle. (Exhibit A, para. 8) The Samsara Dash Cameras were permanently installed in all of the patrol vehicles. (Exhibit A, para. 7) (Amended Complaint, para. 18) The Security Officers were instructed to stay signed in to the Samsara system until the shift was over. Schullerts said she had to sign into the Samara Dash Camera by scanning her assigned Quick Response Code badge to identify herself. (Exhibit A, para. 8) She, and the other security officers, were required to remain in view of the Samsara Dash Camera at all times while inside the Defendants' patrol vehicle, which was used to patrol and inspect 80 campuses owned and operated by Defendant. (Exhibit A, para. 8) (Amended Complaint, para. 16)

The Samsara Dash Camera provided the security officers with the route they would take to go to the schools on their watch. They used the Samsara Dash Camera to send messages back to Dispatch so their supervisors would know where they were located. (Exhibit A, para. 9) The Samsara Dash Camera recorded their cell phone conversations with officers in Dispatch. (Amended Complaint, para. 39) The Samsara Dash Camera application monitored and informed

the Dispatchers when the vehicle engine was on or off, which patrol officer was in the vehicle, when the vehicle was in motion or parked, the gas level of the vehicle, the tire pressure, and when the battery life in the vehicle was low. (Exhibit A, para.10)

The Samsara Dash Camera warned the security officers (and their superiors) if the Samsara Dash Camera Artificial Intelligence detected that the driver tampered with or was not in proper view of the camera, the driver braked too quickly, the vehicle was jostled, impacted, or driven over a bump, the vehicle was turned harshly, or if the driver appeared to be distracted, using a cellular device, or falling asleep. (Exhibit A, para. 13) The Samsara Dash Camera warned the security officers if they ran through a stop sign or made a rolling stop. (Exhibit A, para. 14) The Dispatch and supervisors of the security officers could watch and listen to all of the conversations and actions inside of the vehicle as well as watching the road in front of the vehicle. (Exhibit A, para. 15) They also could watch the Security Officers' interactions with AISD students who often were recorded talking to them through open windows in the vehicles. (Amended Complaint, para. 48)

In Defendant's Motion to Dismiss, it cites to cases relating to the Tex.Civ.Prac.and Rem. Code, §101.021 waiver for governmental immunity caused by operation of a motor vehicle. In these cases, such as *Turner v. Houston ISD,* 2013 WL 3353956 (S.D. Tex. 2013), the Court found that the motor vehicle was nothing more than the setting for where the injury took place. Here, by contrast, the Arlington ISD security vehicle was not simply the venue of the injury. Rather, the act of operating the vehicle using the permanently installed, internet-based Samsara Fleet Management system resulted in the invasion of privacy because the same Samsara Dash Camera recorded the personal audio of Schullerts and Rehana while they were working in the Defendant's patrol vehicle, without their consent or knowledge.

**DEFENDANT'S 12(b)(6) MOTION SHOULD BE DENIED: ELECTRONIC COMMUNICATIONS PRIVACY ACT APPLIES TO GOVERNMENTAL UNITS**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) Facial plausibility requires facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) Essentially, under the federal rules, the complaint is liberally construed in favor of the plaintiff and all well-pleaded facts are taken as true.

In its Motion to Dismiss, Defendant relies on *Jeanty v. TXFM, Inc.,* 2020 WL 5651636 (E.D. Texas 2020) and *Seitz v. City of Elgin,* 719 F.3d 654 (7th Cir. 2013) to argue that the ECPA does not apply to governmental units like Arlington ISD. However, the Defendant's reliance misunderstands the legislative history of the ECPA and fails to advise the Court of the split in authority on this issue of whether a governmental entity can be held liable under the ECPA.

When Congress passed the Electronic Communications Privacy Act, it initially included a civil remedies provision, codified at 18 U.S.C. § 2520, which allowed an individual whose communications are intercepted in violation of the Act to bring a private cause of action against any "person" responsible for such violations.

But later in 1986, 18 U.S.C. § 2520 was amended to provide that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person *or entity* which engaged in that violation such relief as may be appropriate." Pub. L. No. 99-508 Section 103, 100 Stat.

1848, 1854 (1986) (emphasis added). Then in 2001, Congress amended this Section to specifically exclude the United States from liability as an "entity." USA PATRIOT Act of 2001, Pub. L. No. 107-56, § 223(a)(1), 115 Stat. 272, 293. There would have been no reason for Congress to carve out an exception for the United States if governmental entities could not be sued under the statute. *Williams v. City of Tulsa*, 393 F.S.2d 1124, 1132 (N.D. Ok. 2005) ("Congress' subsequent amendment in 2001 to exclude the United States from entities that could be liable evidences a Congressional understanding that the 1986 amendment created governmental liability").

There is a split in authority as to whether the ECPA amendments in 1986 to add "entity" to the law was intended so that government entities could be sued under the Act. In Texas, there appear to be two cases that have opposite results: *Jeanty v. TXFM* (cited in the Defendant's Motion) and *Garza v. Bexar Metropolitan Water District,* 639 F.S.2d 770, 773-774 (W.D. Tex. 2009) (government entities may be held liable under the federal ECPA). The 7th Circuit issued the *Seitz* decision cited by Defendant in its motion, but the 2nd Circuit and 6th Circuits had already determined that the 1986 amendment to the ECPA was intended to create liability under the law for government agencies. *See Organizacion JD Ltd v. Department of Justice,* 18 F.3d 91, 94-95 (2d Cir. 1994); *Adams v. City of Battle Creek*, 250 F.3d 980, 985 (6th Cir. 2001) (finding that governmental entities may be sued under 18 U.S.C. Section 2707(a), the parallel section regarding liability for intercepting stored communications). Other district court decisions holding government units responsible under the FCPA include: *Williams v. City of Tulsa*, 393 F.S.2d 1124, 1132 (N.D. Ok. 2005); *Huber v. N.C. State University,* 594 S.E.2d 402, 407 (N.C. Ct. App. 2004) *(*decided after the 2001 amendment, found the language added to the statute in 2001 persuasive in deciding that Congress intended to create civil liability for governmental entities*)*;

*PBA Local No. 38 v. Woodbridge PD*, 832 F.S. 808, 823 (D.N.J. 1993); *Medina v. County of Riverside*, 2006 WL 8437749 (C.D. Cal. 2006)(The amendment in 1986 suggested an intent to extend liability to governmental entities); *Conner v. Tate*, 130 F.S.2d 1370, 1374-75 (N.D. Ga. 2001)('governmental entities are amenable to suit under civil liability provisions of federal wiretap statutes and Electronic Communications Privacy Act.")

The Electronic Communications Privacy Act was signed into law by President Ronald Reagan in 1986 to handle the challenges of the upcoming digital revolution. This law is now 40 years old: signed long before AI, Bluetooth, GPS, internet-connected dash cameras, smart phones and smart devices became commonplace at home and work. The ECPA regulates how electronic communications can be accessed, intercepted, or disclosed by government agencies, service providers, and private entities. While the technology has changed since the law was enacted, its goal has remained to protect the privacy of persons and employees like the Plaintiffs whose private conversations were recorded, reviewed and monitored by their employer without their knowledge or consent.

Given the early stage of this litigation and the split in the courts over 18 U.S.C. § 2520, the Plaintiff argues that a Motion to Dismiss the claims under the ECPA is improper and premature.

## **CONCLUSION**

In light of the facts presented in the Amended Complaint and Plaintiff Schullerts' affidavit, the Plaintiff asserts that the Defendant's 12(b)(1) Motion to Dismiss Count II claims of invasion of privacy should be denied.

Further, Defendant's 12(b)(6) Motion to Dismiss Count I claims under the ECPA also should be denied because the law shows that governmental entities are amenable to suit under

the ECPA. In construing the Amended Complaint in the light most favorable to the Plaintiff, there are enough facts to state a claim to relief that is plausible on its face.

Dated this 23rd day of June, 2026.

Respectfully submitted,

COUNSEL FOR PLAINTIFFS

/*s/ Suzanne M. Anderson*
Suzanne M. Anderson
Texas State Bar No. 14009470
sanderson@vkv.law

**VALLI KANE & VAGNINI LLP**
1825 Market Center Blvd,
Dallas, TX 75207
(214) 797-9021 (cell)
(516) 203-7180 (phone)
(516) 706-0248 (fax)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 23, 2026, a true and correct copy of the above document was served on all counsel of record via email.

/s/ Suzanne M. Anderson
Suzanne M. Anderson